UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| SYMANTHEIA SMITH, ) | |
| ) | |
| **Plaintiff,** ) | Civil Action Number |
| v. ) | **4:20-cv-00684-AKK** |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION

Symantheia Smith brings this action under 42 U.S.C. § 405(g) of the Social Security Act seeking review of the final adverse decision of the Commissioner of the Social Security Administration. Doc. 1. The court finds that the Administrative Law Judge applied the correct legal standard and that his decision, which has become that of the Commissioner, is supported by substantial evidence. The court therefore affirms the decision denying benefits.

**I.**

Smith was unemployed before the reported onset date of her disability, and prior to that, she worked as poultry grader and motel maid. R. 25, 45-47, 214-15. On November 22, 2016, Smith applied for Title XVI Supplemental Security Income based on congestive heart failure, cardiomyopathy, degenerative disc disease, arthritis, migraines, and a right hip fracture. R. 36, 88. Smith initially alleged a

disability onset date of June 26, 2013, but later amended it to November 22, 2016. R. 15, 36-37, 188.

After the SSA denied Smith's application, R. 90-94, she requested a formal hearing before an ALJ. R. 97-99. The ALJ likewise denied her claim. R. 15-27. The SSA Appeals Council declined to review the ALJ's decision, rendering it the final decision of the Commissioner. R. 1. Smith then filed this action for judicial review under 42 U.S.C. § 405(g).  Doc. 1.

## II.

This court's review is limited to determining whether the record contains substantial evidence to sustain the ALJ's decision and whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Under 42 U.S.C. §§ 405(g) and 1383(c), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, the court cannot reconsider the facts, reevaluate the evidence, or substitute its judgment for the Commissioner's. *Id.* Instead, it must review the final decision as a whole and determine if it is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703

F.2d at 1239). As the Supreme Court recently emphasized, this burden "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence falls somewhere between a "scintilla" and a "preponderance of evidence." *Martin*, 894 F.2d at 1529. If substantial evidence supports the Commissioner's factual findings, then the court must affirm, even if the evidence preponderates against those findings. *See id.* However, this "does not yield automatic affirmance" despite the limited scope of judicial review, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and reviewing courts are not to act as mere "automatons[,]" *Bloodsworth*, 703 F.2d at 1239 (internal quotations omitted). Conclusions of law, in contrast, receive de novo review. *Martin*, 894 F.2d at 1529.

### III.

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

3

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or equals one listed by the Commissioner;
(4) whether the claimant is unable to perform his or her past work; and
(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

## IV.

In performing the five-step sequential analysis, the ALJ initially determined at Step One that Smith had not engaged in substantial gainful activity since the date of her application. R. 17. At Step Two, the ALJ found that Smith had the following severe impairments: nonischemic cardiomyopathy, hypertension, lumbar degenerative disc disease, status post remote hemilaminectomy at L4-5, osteoarthritis of the bilateral knees, right femoral neck fracture, and status post partial right hip replacement. *Id.* at 17-20. He found that Smith had several non-

4

severe impairments including: psoriasis, diabetes mellitus type II, degenerative disc disease of the cervical spine, hepatitis C, gastritis, status post right elbow surgery, status post carpal tunnel release, and alcohol abuse. *Id.* The ALJ then found that Smith did not satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." *Id.* at 20. After answering Step Three negatively, the ALJ concluded that Smith

> has the residual functional capacity [RFC] to perform 'light' work" . . . with occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolding; occasional balancing, stooping, kneeling, and crouching; and no crawling. . . . She requires a sit/stand option, defined as a brief positional change from sitting to standing and vice versa, with no more than one change in position every 20 minutes and without leaving the workstation so as not to diminish pace or production.

R. 20. At Step Four, the ALJ observed that Smith had past relevant work as a poultry grader, but that she was unable to perform this work. R. 25. In the final step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Smith] can perform." R. 25. To reach that conclusion, the ALJ considered Smith's age, education, work experience, and RFC alongside the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, and a vocational expert's testimony. R. 25-26. Because the ALJ answered Step Five negatively, he concluded that Smith was not disabled. R. 26

V.

Smith contends that the ALJ erred (1) by concluding that Smith has the RFC to perform light work with certain exceptions, *see* doc. 13 at 13, and (2) by relying on the vocational expert's testimony that was based purportedly on an incomplete hypothetical question, *id.* at 20. The court will address each argument in turn.

A.

Smith's first contention of alleged error is related to the RFC. Allegedly, the ALJ ignored her testimony in several respects, doc. 14 at 30-31, rendered a conclusory RFC, and failed to include "limitations caused by pain due to [her] partial hip replacement [and] fatigue due to [her] heart condition" in the RFC, *id.* at 13, 15. These contentions are unavailing.

1.

A review of the record shows that the ALJ directly addressed several aspects of Smith's testimony that Smith claims the ALJ ignored. *Id.*; R. 20-25.[1] And, the ALJ

---

[1] The ALJ considered the following subjective claims that Smith contends the ALJ ignored: "Claimant states the biggest problem she has keeping her from working is her hip. (R-37). She also suffers from congestive heart failure and has a lot of breathing problems. (R-37). It's hard for her to sit, walk, or stand for long periods. (R-37) . . . . Everything makes her out of breath. (R-37). She's on several kinds of medications. (R-37). Claimant underwent back surgery in 1987 to repair two discs. (R-38). She continues to have problems with her lower back. . . . Her pain scale is usually at a 4 or 5. (R-38). On a bad day, the pain would be a 10. (R-38) . . . . On those days, she tries to rest and take Ibuprofen. (R-39) . . . . Claimant spends a lot of her day reclining . . . (R-39). Reclining helps her back pain. (R-39). Claimant spends at least 3-4 hours each day in the recliner. (R-40) . . . she had arthritis in her knees. (R-40). She had knee surgery for a torn ACL. (R-40) . . . . Claimant can sit 30-40 minutes before she has to stand up and walk around or lie down. Claimant cannot walk any distance because of the congestive heart failure. (R-41). She's not able to completely bend at the waist; she can't squat; she cannot crawl on the floor. . . . When claimant

addressed the remaining testimony by finding that while Smith's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[,]" Smith's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 22; 20 C.F.R. § 416.929. Ultimately, however, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as [was the case here,] the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court . . . to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotations omitted).

2.

Smith asserts also that "the RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by [Social Security Ruling] 96-8p." Doc. 13 at 15. The record belies this contention. As the Commissioner notes, the "ALJ repeatedly referenced the record in his more than four-page discussion of [Smith]'s RFC, and he specifically explained why the evidence supported the limitations he included in [Smith]'s RFC." Doc. 14 at 8. Indeed, based on Smith's impairments, the ALJ concluded that Smith could perform

---

had a heart attack in November 2016, she only had 10% heart function. She wore a life vest for three and a half months." Doc. 13 at 14-15; R. 20-25.

7

light work subject to several narrowly tailored limitations. R. 20. In making this finding, the ALJ tailored the limitations he imposed to reflect Smith's various impairments. For example, in light of Smith's back, knee, and hip injuries, the ALJ limited Smith's balancing to "no more than occasional." R. 24. To account for Smith's cardiomyopathy, hypertension, cardiovascular, and muscular impairments, the ALJ required the "avoidance of concentrated exposure to temperature extremes and pulmonary irritants . . . ." and limited Smith's exposure to hazards. *Id.* And for the lumbar spine degenerative changes and right hip replacement, the ALJ required a sit/stand option for Smith. *Id.* Finally, for the hand pain and history of carpal tunnel release, he limited Smith to "frequent, but not constant, handling and fingering bilaterally" after balancing that the record also showed that Smith had "intact grip strength and dexterity on examination." *Id.* This record establishes that the ALJ evaluated Smith's case in accordance with SSR 96-8p. 20 C.F.R. Part 404, Subpart P, App. 2; R. 20-25.

3.

Finally, Smith alleges that the ALJ failed to include "limitations caused by pain due to [her] partial hip replacement [and] fatigue due to [her] heart condition" in the RFC. Doc. 14 at 13, 15. Contrary to Smith's contention, the ALJ addressed Smith's hip pain in the RFC and outlined Smith's right hip fracture and hip replacement from 2018. R. 24, 590-627. As supported by the record, the ALJ

8

explained that during Smith's follow-up appointment, while Smith reported having pain, the surgeon noted that her prosthesis was in good shape, her incision had healed nicely, and she had no pain when completing passive range of motion. R. 24, 641-44. The ALJ found the postural limitations included in the RFC were "supported by" this evidence. R. 24. He also required Smith have a sit/stand option due to Smith's hip fracture and the ability to change positions every 20 minutes. R. 24. The ALJ's analysis is supported by the record.

The ALJ also evaluated Smith's heart condition by thoroughly and accurately outlining Smith's medical history of heart failure and cardiomyopathy. R. 22, 476-554. The ALJ concluded that "[t]he medical record . . . shows that the cardiac symptoms to which the claimant testified did not last for a period of at least twelve (12) months." R. 23. He reasoned that Smith's heart function had improved to normal levels and Smith no longer required a LifeVest. R. 23, 580-87, 590-627, 645-52. The substantial evidence supports the ALJ's findings. As the ALJ noted, Smith's cardiologist found "no evidence of congestive heart failure and no evidence of volume excess on examination." R. 23, 580-87, 645-52.  And, the records shows that this improvement in heart function has remained constant. R. 23, 580-87, 590-627, 645-52. Based on this evidence, the ALJ found that limiting Smith to light work was supported by her heart conditions. *Id.* at 24. Further, the ALJ limited Smith's

concentrated exposure to temperature extremes, pulmonary irritants, and hazards due to her cardiomyopathy. *Id.*

4.

To close, the court reiterates that its sole function on appeal is to determine whether the record contains substantial evidence to support the underlying decision, not to reweigh evidence or substitute its judgment for the Commissioner's. *Martin*, 894 F.2d at 1529. "[C]redibility determinations are the province of the ALJ," and courts should "not disturb a clearly articulated credibility finding supported by substantial evidence[.]" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citations omitted). That is true even where the evidence preponderates against the Commissioner's finding. *Martin*, 894 F.2d at 1529.

A careful review of the record shows that the ALJ's RFC determination is based on substantial evidence. Specifically, the record shows Smith did not seek treatment for her back pain beyond a trip to the emergency room in June of 2018. R. 628-631. Smith's cardiac symptoms did not last 12 months as her heart failure emerged on November 18, 2016 and she was medically optimized on April 17, 2017. R. 476-542, 568-69, 590-627. Further, as noted above, Smith's hip was recovering well. R. 641-44. On April 26, 2017, the objective medical examiner also established that Smith "is able to heel, toe, tandem walk, and stoop and rise on the knees." R.

575. The examiner found that Smith had grip strength of 5 out of 5 and that Smith had "the ability to make fists, oppose thumb to fingers, tie shoe laces, pick up small objects, button, hold a glass, and turn a doorknob." *Id.* The examiner found Smith's range of motion to be normal except for the range of motion in her dorsiflexion spine. R. 577. This record evidence is consistent with the ALJ's conclusion that Smith can perform light work with limitations. 20 C.F.R. §§ 404.1567(b), 416.967(b).

## B.

Smith also contends that the ALJ improperly relied on the testimony of the vocational expert to find Smith could perform other work at Step Five because "[t]he hypothetical question assumed [Smith] could perform light work," and "did not accurately state [Smith's] limitations due to her heart condition, back pain, neck pain and hip pain or her residual functional capacity." Doc. 15 at 11. Allegedly, "there is no medical evidence that [Smith] can work" and that "[t]he VE testimony is not sufficient evidence because the hypothetical question does not fully state [Smith's] impairments and limitations." Doc. 13 at 27.[2] The court disagrees because the

---

[2] During the hearing, the ALJ posed the following question to the vocational expert,

> Assume a hypothetical individual with the same vocational profile as the claimant. Assume that the individual would be limited to light work. The individual would be further limited to just occasional climbing of stairs and ramps, would be unable to climb ladders, ropes, or scaffolding, would be limited to just occasional balancing, stooping, kneeling, crouching, however, would be unable to crawl, would need to avoid concentrated exposure to temperature extremes, need to avoid unprotected heights and dangerous moving machinery, would need to avoid concentrated exposure to dust, fumes, odors, and poorly ventilated areas, would be

hypothetical the ALJ posed mirrors the ALJ's RFC assessment. R. 20. In that respect, Smith is basically challenging again the ALJ's RFC assessment. But, as the court has found, the RFC assessment is supported by substantial evidence. Indeed, a review of the record shows that the ALJ relied on substantial evidence to find Smith could perform a reduced range of light work. *See supra* § V.A. And, Smith has not pointed the court to any medical evidence that shows she is more restricted than the ALJ's finding. Consequently, the ALJ properly relied on the vocational expert's testimony to find Smith could perform other work.

## VI.

In conclusion, substantial evidence supports the ALJ's decision that Smith is not disabled, and the ALJ applied the proper legal standards in reaching that determination. The Commissioner's final decision is therefore due to be affirmed in a separate order in accordance with this Memorandum Opinion.

**DONE** the 19th day of August, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

limited to frequent but not constant handling and fingering bilaterally, would also require a sit/stand option and in defining that, is just a brief positional change from sitting to standing and vice versa with no more than one change in position every 20 minutes and without leaving the workstation so as not to diminish pace or production.

R. 50.